**CARNEY BATES & PULLIAM, PLLC**
Allen Carney (*pro hac vice*)
acarney@cbplaw.com
Hank Bates (*pro hac vice*)
hbates@cbplaw.com
Samuel Jackson (*pro hac vice*)
sjackson@cbplaw.com
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
Fax: (501) 312-8505

**ANDERSON & KARRENBERG**
Jacob D. Barney (#16777)
50 W. Broadway, Suite 600
Salt Lake City, UT 84101
Tel: (801) 534-1700
Fax: (801) 364-7497

**LEVI & KORSINSKY LLP**
Mark Reich (to apply for *pro hac vice*)
mreich@zlk.com
Gary Ishimoto (to apply for *pro hac vice*)
gishimoto@zlk.com
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff and the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH – CENTRAL DIVISION**

| | |
|---|---|
| BENJAMIN GARCIA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY d/b/a BYU BROADCASTING<br><br>Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Ann Marie McIff Allen<br><br>Mag. Judge: Hon. Daphne A. Oberg<br><br>Case No.: 1:24-cv-00188-AMA-DAO |

## I. INTRODUCTION

Plaintiff Benjamin Garcia ("Plaintiff" or "Settlement Class Representative") moves unopposed for an order granting preliminary approval of the Class Action Settlement Agreement[1] (the "Settlement" or "Settlement Agreement") he has reached with Defendant Brigham Young University d/b/a BYU Broadcasting ("Defendant" or "BYUtv"). The Settlement will fully resolve this litigation, wherein Plaintiff alleges Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by installing and running the Meta Pixel on its website, thereby disclosing consumers' personally identifiable information, which the VPPA defines as including information that identifies a person as having requested or obtained specific video materials or services from a video tape service provider. Defendant has denied that it violated the VPPA. Under the proposed Settlement, Defendant will create a $1,250,000 non-reversionary cash fund for the benefit of the Settlement Class. Defendant also has agreed to suspend operation of the Meta Pixel on portions of its website relevant to VPPA compliance—i.e., webpages that both include video content and have a URL that identifies the video content viewed—unless and until the VPPA is either amended or Defendant obtains VPPA-compliant consent.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of Court-awarded fees, expenses, service award, and administrative costs, Settlement Class Members who submit valid claims through a very simple claims process will each receive a *pro rata* share of the Net Settlement Fund. Plaintiff and Class Counsel have vigorously prosecuted this action on behalf of the Settlement Class and—through extensive, arm's-length negotiations overseen by experienced mediator Hon. Freda L. Wolfson (Ret.)—have

---

[1] Capitalized terms that are otherwise undefined have the same meaning as in the Settlement Agreement.

developed an understanding of the strengths and weaknesses of the action. Notwithstanding his confidence in the merits of his VPPA claim, Plaintiff recognizes the challenges and risks inherent in proceeding through litigation and proving his claims at trial. The challenges and risks include overcoming the pending motion to dismiss, certifying the proposed class, maintaining class certification through trial and any appeal, as well as Defendant's various defenses to liability, including those arising under the statutory text and Plaintiff's consent to Facebook's terms of use and service, as well as defenses to any recovery of damages and other affirmative defenses.

For the reasons set forth herein, Plaintiff respectfully requests the Court: (1) find it will likely (a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on the proposed Settlement; (2) appoint Plaintiff Benjamin Garcia as Class Representative for the Settlement Class; (3) appoint Allen Carney, Hank Bates, and Sam Jackson of Carney Bates & Pulliam, PLLC; Jacob D. Barney of Anderson & Karrenberg, P.C.; and Mark Reich of Levi & Korsinsky LLP as Class Counsel; (4) direct notice to the Settlement Class and approve the form and manner thereof; (5) set a schedule for final approval of the Settlement and Plaintiff's request for attorneys' fees and expenses; (6) approve the proposed schedule of events; and (7) schedule a Fairness Hearing.

## II. OVERVIEW OF THE LITIGATION AND SETTLEMENT

### A. Background

On November 12, 2024, Plaintiff filed a putative class action complaint against Brigham Young University d/b/a BYU Broadcasting in the United States District Court for the District of Utah (the "Action") alleging violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. (the "VPPA"). ECF No. 2. The material allegations of the Complaint center on Defendant's alleged

disclosure of its subscribers' personally identifiable information ("PII"), as defined under the VPPA, to Meta (formerly Facebook) without consent by installing the Meta Pixel on its websites.

On January 17, 2025, Defendant filed a Motion to Dismiss Plaintiff's Complaint. ECF No. 22. On February 14, 2025, Plaintiff filed an opposition to Defendant's Motion to Dismiss. ECF No. 23. On February 28, 2025, Defendant filed its reply in further support of its Motion to Dismiss. ECF No. 27.

On April 16, 2025, the parties filed a Joint Stipulation to Stay Pending Outcome of Mediation, informing the Court that they had agreed to mediation before Hon. Freda L. Wolfson (Ret.) on May 9, 2025, and requesting the Court to stay all proceeding to May 30, 2025 (ECF No. 32), which the Court granted (ECF No. 33).

On March 7, 2025, Plaintiff's Counsel filed a letter motion with the Court requesting a forty-five (45) day extension with regard to the parties' deadline to request an Initial Pretrial Conference, to enable the parties to explore the possibility of mediation (ECF No. 30), which the Court granted (ECF No. 31).

On May 9, 2025, the parties attended an all-day mediation with the Honorable Freda L. Wolfson (Ret.). As part of the mediation process, the parties submitted mediation statements and exchanged informal discovery regarding the merits of the case and class certification under Fed. R. Civ. P. 23 and Fed. R. Evid. 408. The mediation resulted in a settlement in principle.

On May 29, 2025, the parties filed a Joint Status Report, wherein the parties informed the Court that as a result of a full-day mediation session before Hon. Freda L. Wolfson (Ret.), the parties were able to reach an agreement in principle to resolve this matter. ECF No. 34. As such, the parties further asked the Court to extend the stay in this matter to and through June 9, 2025, on

which date Plaintiff would either file a motion for preliminary approval of the Settlement or provide a further status update to the Court (*see id.*), which the Court granted. ECF No. 35.

On June 9, 2025, the parties filed a joint motion for extension of the stay to and through June 23, 2025, while they continued to diligently work together on finalizing the Settlement Agreement and related exhibits, selecting a settlement administrator, and consulting with the settlement administrator to ensure the settlement agreement includes an optimal notice plan.

Since the mediation, counsel for the parties continued to negotiate in order to reach the final terms of the Settlement, which are memorialized in the Settlement Agreement and exhibits and summarized below.

### B. **The Proposed Settlement**

#### A. The Settlement Class

The Settlement Agreement defines the Settlement Class as follows:

> all individuals who, as persons in the United States, (1) had a Facebook account during the Class Period; (2) had a subscription (i.e., login credentials) to http://www.byutv.org during the Class Period; and (3) viewed videos on www.byutv.org during the Class Period.

Settlement Agreement ¶ 1.29. The Settlement Class specifically excludes: counsel to the Settling Parties, and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; Defendant, any entity in which Defendant has a controlling interest, any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; any persons who, as of the date of this Agreement, have asserted claims against Defendant under the VPPA through counsel other than Class Counsel; any persons who have released claims relating to the Action; the Hon. Freda Wolfson; and any persons who properly execute and timely request exclusion from the Settlement Class. *Id.*

2. Monetary Relief

Defendant has agreed to pay $1,250,000.00 to create a non-reversionary Settlement Fund for the benefit of Settlement Class Members. Settlement Agreement ¶¶ 1.31, 1.32, and 2.1. Settlement Class Members who submit valid claims will receive a *pro rata* payment after the deduction of settlement-related costs, including Settlement Administration Expenses, any court-awarded attorneys' fees and expenses, and any court-awarded Service Award. *Id*. ¶¶ 1.26, 1.27, and 2.1.

3. Business Practice Changes

Defendant also has agreed to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward. More specifically, Defendant has agreed to suspend operation of the Meta Pixel on any pages on its website that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA is amended, repealed, or otherwise invalidated by judicial decision as applied to the use of website pixel technology, or until Defendant obtains VPPA-compliant consent that would apply to disclosure of the video content viewed to Meta. *Id*. ¶ 2.2. Nothing about this provision prevents the use of the Meta Pixel where the disclosure of information to Meta does not identify specific video materials that a user has viewed. *Id*.

4. Release

In exchange for the relief described above, Plaintiff and the Settlement Class shall release all claims that have or could have been asserted against Defendant, relating to the facts, transactions, or events alleged in this action. *See id*. ¶ 1.23 (Released Claims), ¶ 1.24 (Released Parties), and ¶ 7.4.

5. Notice

The proposed notice plan (the "Notice Plan") was designed to provide the "best notice practicable" to Settlement Class Members, and as such, satisfies Rule 23 of the Federal Rules of Civil Procedure and due process. The Notice Plan includes dissemination of individual notice by email to all Settlement Class Members for whom a valid email address is available in the Class List. *Id*. ¶ 4.1(a)-(b). Thirty days after the Notice Date, the Settlement Administrator shall send a reminder Notice via email to all Settlement Class Members who have not yet filed a claim with the Administrator. *Id*. ¶ 4.1(c). Additionally, if deemed necessary by Class Counsel in consultation with the Settlement Administrator, the Parties agree to discuss additional notice and/or means of notice, including, but not limited to, publication notice or sending a third Email Notice. *Id*. ¶ 4.1(d). Additionally, Notice shall be provided on a case-specific settlement website that will include the ability to file Claim Forms online, and a toll-free telephone line with an interactive voice response ("IVR") system will be established to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Action. *Id*. ¶¶ 4.1(e)-(f).

6. Attorneys' Fees, Litigation Expenses, and a Service Award

Class Counsel may separately move for an award of attorneys' fees of up to one-third of the Settlement Fund and reimbursement of litigation expenses. Class Counsel may also request a Service Award of up to $5,000 for the Settlement Class Representative. *Id*. ¶¶ 1.26, 8.1-8.3.

## III. PROPOSED SCHEDULE OF EVENTS

Consistent with the provisions of the Settlement Agreement, Plaintiff respectfully proposes the following schedule for the various Settlement events:

| Event | Date |
|---|---|
| Deadline for Defendant to provide the Class List to the Settlement Administrator | 14 calendar days following entry of Preliminary Approval |

| | |
|---|---|
| Deadline for Settlement Website and IVR to go live | 30 calendar days following entry of Preliminary Approval |
| Deadline to commence Notice Program (the "Notice Date") | 30 calendar days following entry of Preliminary Approval |
| Deadline for applications for final approval, attorneys' fees and expenses, and service awards | 45 calendar days following the Notice Date |
| Deadline for opt outs and objections to be postmarked | 60 calendar days following the Notice Date |
| Deadline for Parties to file papers in response to any timely and valid objections | 14 calendar days prior to Final Fairness Hearing |
| Final Fairness Hearing | At least 90 calendar days after the Notice Date |

## IV. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 23(e) requires court approval of a proposed class action settlement upon a finding that the settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2). The procedure for judicial review of a proposed class action settlement is well established:

> Approval of a class action settlement takes place in two stages. In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement. *See In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009). In the second stage, after notice is given to the putative class, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *see Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

*Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018). Thus, "[p]reliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Id.*; *see also CO Craft, LLC v. Grubhub Inc.*, No. 20-CV-01327-NYW-NRN,

2023 WL 3763525, at *4 (D. Colo. June 1, 2023) ("A proposed class action settlement will be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives." (internal quotation marks omitted)).

Under the December 1, 2018 amendments to Rule 23(e), the preliminary approval process requires the Court to assess whether the parties have shown that "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)-(2). Specifically, Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In performing this analysis, courts in this Circuit supplement the Rule 23(e)(2) factors with the four factors set forth in *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984). *See Lowery v. City of Albuquerque,* No. CIV 09-0457 JB/WDS, 2013 WL 1010384, at *29 (D.N.M. Feb. 27, 2013). The *Jones* factors are: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility

of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324.

Finally, courts in this Circuit recognize a "strong judicial policy in favor of settlements, particularly in the class action context." *In re Credit Default Swaps Auctions Litig.*, No. 1:21-CV-0606 KG/DLM, 2024 WL 264035, at *7 (D.N.M. Jan. 24, 2024) (noting that "[t]he Tenth Circuit has [ ] recognized the importance of th[is] policy for over 50 years."); *Grady v. De Ville Motor Hotel, Inc.,* 415 F.2d 449, 451 (10th Cir.1969) ("It is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies."); *see also* Herbert B. Newberg & William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:44 (6th ed. 2022) (hereinafter "Newberg") ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

## V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. <u>The Settlement Class Has Been Vigorously Represented and the Proposed Settlement Was Fairly and Honestly Negotiated at Arm's Length</u>.

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also Jones*, 741 F.2d at 324 (overlapping with the first *Jones* factor, *i.e.* whether the proposed settlement was fairly and honestly negotiated). In assessing adequacy of representation, courts focus on two questions: "(1) whether named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class." *Grubhub Inc.*, 2023 WL 3763525, at *12 (further noting "[a]dequate representation is usually presumed in the absence of contrary evidence.").

Here, Plaintiff's interests are aligned with the interests of Settlement Class Members as all suffered the same alleged injury (the improper disclosure of personally identifiable information to Meta without consent via the Meta Pixel) and have the same interest in securing remedial and injunctive relief resulting in the cessation of the collection and possession of their personally identifiable information. Moreover, the monetary and remedial relief achieved through the Settlement applies equally and uniformly to benefit all members of the Settlement Class. Thus, there is no conflict between Plaintiff and the members of the Settlement Class.

Further, Plaintiff and Class Counsel have vigorously and adequately represented the Settlement Class. Class Counsel are highly qualified, have extensive experience and knowledge in prosecuting similar consumer class actions, particularly those involving privacy violations, including those under the VPPA. *See* Decl. of Class Counsel at ¶¶3-7. Moreover, Class Counsel performed significant work in identifying, litigating, and settling the claims in this Action, including engaging in extensive factual investigation; drafting the complaint; engaging in informal discovery regarding the merits of Plaintiff's claim and class certification; and participating in a full-day mediation before experienced mediator Hon. Freda Wolfson. *Id*. at 9. Likewise, Plaintiff was committed to acting in the best interests of the Settlement Class, assisted in the investigation of this case, reviewed and approved pleadings, and stayed in regular contact with Class Counsel. *Id*. at 24.

In sum, Plaintiff's interests are aligned with the interests of Settlement Class Members. Class Counsel and Plaintiff had the ability to, and did, thoroughly and effectively represent the interests of the Settlement Class throughout the litigation and the mediation process. The proposed Settlement was the result of arm's length negotiations between highly experienced counsel, with the assistance of an experienced mediator. Thus, the Settlement satisfies Rule 23(e)(2)(A) and (B),

as well as the first *Jones* factor. *See Pan v. Atlas Real Est. Grp. LLC,* No. 23-CV-00910-DDD-KAS, 2024 WL 5678049, at *7 (D. Colo. Nov. 7, 2024), *report and recommendation adopted,* No. 1:23-CV-00910-DDD-KAS, 2024 WL 5678050 (D. Colo. Dec. 3, 2024) (finding factors that "parties were represented by experienced counsel and utilized an outside mediator [ ] weighs heavily in favor of a finding that the settlement was fairly and honestly negotiated"); *Suaverdez v. Circle K Stores, Inc.*, No. 20-CV-01035-RM-NYW, 2021 WL 4947238, at *7 (D. Colo. June 28, 2021), *report and recommendation adopted*, No. 120CV01035RMRNYW, 2021 WL 5513740 (D. Colo. Oct. 19, 2021) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.").

### B. The Settlement Is an Excellent Result for the Settlement Class, and Consideration of the Risks of Continued Litigation, the Effectiveness of Proposed Distribution Method, the Anticipated Application for Attorneys' Fees, and the Lack of any Side Agreement Favor Preliminary Approval.

Next, the Court must assess whether the relief provided to the Settlement Class is adequate, taking into consideration the following four factors: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." *See also Jones*, 741 F.2d at 324 (overlapping with *Jones* factors two, three, and four).

#### 1. The Complexity, Expense, and Duration of Litigation Through Trial and Appeal.

Rule 23(e)(2)(C)(i) first requires courts to consider "the costs, risks, and delay of trial and appeal." This inquiry overlaps with the second *Jones* factor, i.e. "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt."

Continued litigation of this action would be complex, expensive, and lengthy. *Circle K Stores, Inc.*, 2021 WL 4947238, at *7. In *Circle K Stores*, the court noted "[t]rial of any case, let alone a class action, is inherently risky." *Id*. The court further noted that this risk is heightened where, as here, the "case is still in an early enough stage" and "proceeding to trial runs the risk of delaying the Parties' resolution of th[e] case by several months, if not longer." *Id*.

Here, at the time the Settlement was reached, there was a pending Motion to Dismiss and class certification discovery and briefing had not taken place. Thus, if litigation were to continue, Plaintiff would be faced with the hurdles of surviving Defendant's Motion to Dismiss and achieving and maintaining class certification through trial and any potential appeal. In addition, further litigation would also entail summary judgment motions, Daubert briefing, and a lengthy trial. Thus, continued litigation would pose significant risks, time, and costs.

Additionally, success at trial is far from certain. Defendant raised multiple defenses to liability, including those arising under the statutory text and Plaintiff's consent to Facebook's terms of use and service, and Defendant would have likely appealed any adverse verdict. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risks of trial and appeal and of receiving a recovery less than that offered through Settlement, or the possibility of receiving no relief at all. Because of this, it is reasonable to conclude "that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated," and thus, settlement is a favorable alternative to continued litigation. *Lucas v. Kmart Corp*., 234 F.R.D. 688, 693 (D. Colo. 2006); *see also In re*

*Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) ("The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

In sum, while Plaintiff believes in the merits of his case, by reaching a favorable settlement with the assistance of a neutral mediator, Plaintiff avoided significant expense and delay and the risks of trial and appeal. Consideration of these factors sharply weigh in favor of preliminary approval.

2. The Settlement Provides Significant and Immediate Relief to Settlement Class Members, the Proposed Method of Distributing Relief to the Settlement Class Is Effective, and the Lack of an Agreement Required to Be Identified Under 23(e)(3).

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective," while Rule 23(e)(2)(C)(iv) requires identification of any agreement under Rule 23(e)(3). Similarly, the third *Jones* factor focuses on "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Jones*, 741 F.2d at 324.

Here, the Settlement provides a common fund of $1,250,000 for the benefit of the approximately 126,450 Settlement Class Members, which equates to roughly $9.88 per Settlement Class Member before deduction of costs and fees. This is at the higher end of recoveries in settlements approved in the VPPA context. *See In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (VPPA settlement providing $16.50 per claim); *Feldman v. Star Tribune Media Company LLC*, 0:22-CV-01731, slip opinion (June 17, 2024) ($2,900,000 VPPA settlement yielding per settlement class member recoveries of $9.67); *Sellers, et al. v. Bleacher Report, Inc.*, 2024-003537-CA-01, slip opinion (August 8, 2024) (granting final approval to $4,800,000 VPPA settlement yielding per settlement class member

recoveries of $1.78); *see also In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1117 (9th Cir. 2021) (affirming district court's finding that "injunctive relief, together with the indirect benefits conferred by the *cy pres* provisions, was fair, reasonable, and adequate compensation to the class members.").

In addition to these monetary benefits, Defendant has agreed to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward. This is the same injunctive relief Plaintiff would have sought through trial. Thus, the benefits achieved through the Settlement fall well within the range of a reasonable settlement. *KPH Healthcare Servs., Inc. v. Mylan N.V.*, No. 20-2065-DDC-TJJ, 2025 WL 416282, at *2 (D. Kan. Feb. 6, 2025) (preliminarily approving settlement where it, among other things, was "within the range of possible approval"). Moreover, the Settlement guarantees Settlement Class Members immediate monetary and prospective relief now without the risks and uncertainties of continued litigation (*see supra*), which certainly outweighs the mere possibility of future relief after lengthy and expensive litigation. *See KPH Healthcare Servs., Inc. v. Mylan, N.V.*, No. 20-2065-DDC-TJJ, 2024 WL 3360499, at *2 (D. Kan. July 9, 2024) ("The Settlement provides the Class Members with immediate recovery for claimed injuries allegedly derived from purchases of EpiPens. And this immediate recovery is more valuable than a 'mere possibility' that Class Members might achieve a more favorable outcome 'after protracted and expensive litigation' that may well last "many years in the future."); *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held proper to take the bird in the hand instead of a prospective flock in the bush." (internal quotation marks omitted)).

Additionally, under the Settlement, payments to Settlement Class Members with Approved Claims will be made on a *pro rata* basis, with no funds reverting to Defendants. Claim Forms shall

be submitted to a third-party administrator for processing and approval. All Settlement Class Members will also benefit from the business practice changes. Thus, the proposed methods of distribution are fair and effective. *See Commodity Futures Trading Comm'n v. Rust Rare Coin, Inc.*, No. 2:18-CV-00892, 2020 WL 4904165, at *1 (D. Utah Aug. 20, 2020) ("In crafting a distribution plan, courts frequently favor a pro rata distribution of funds."); *Valencia v. Greater Omaha Packing*, No. 8:08CV161, 2014 WL 284461, at *3 (D. Neb. Jan. 23, 2014) (finding a pro rata distribution to the class was fair and equitable).

Additionally, there are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3). Accordingly, consideration of Rule 23(e)(2)(C)(ii) and (iv) and the third *Jones* factor weigh in favor of preliminary approval.

3. <u>The Plaintiff and Class Counsel Believe the Settlement and the Proposed Award of Attorney's Fees is Fair and Reasonable.</u>

Under Rule 23(e)(2)(C)(iii), this Court is also to consider the "terms of any proposed award of attorney's fees, including timing of payment." Similarly, the fourth *Jones* factor examines "the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324.

As discussed above and disclosed in the Notices (*see* Settlement Agreement at Exs. B and C), the Settlement permits Class Counsel to apply for a percentage of the common fund fee award. Class Counsel's request will not exceed one third of the common fund which is reasonable in light of the work performed and the results obtained (*See* Decl. of Class Counsel at ¶ __) and consistent with precedent in the Tenth Circuit. *See, e.g.*, *KPH Healthcare Servs.,* 2024 WL 3360499, at *4 (awarding attorneys' fees in the amount of one-third of the Settlement Amount as reasonable); *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*, No. 1:22-CV-01176-RM-SBP, 2024 WL 1743497, at *9 (D. Colo. Apr. 23, 2024) (stating attorneys' fees of one-third of the settlement fund "plus reasonable out-of-pocket costs and expenses not to exceed $10,000" "are typical of those

commonly found reasonable in class settlements," and further stating service awards of $10,000 "are typical in class action settlements"). Class Counsel will not receive any funds until after notice is made to the Settlement Class and the Court has entered an order addressing their fee request. Because the Settlement Agreement provides only the opportunity to seek a reasonable attorneys' fee without any effect on the relief to Plaintiff and the Settlement Class, this factor favors preliminary approval.

Lastly, the Settlement is supported by Plaintiff and Class Counsel. Class Counsel have carefully evaluated the Settlement, and believe it provides substantial value to Plaintiff and the Settlement Class. As a result of the Settlement, these benefits will be made immediately available to the Settlement Class without the delay or risk attendant with continued litigation. Indeed, there is no guarantee that the Settlement Class would secure a better outcome were the case prosecuted through trial. "Counsel's judgment as to the fairness of the agreement is entitled to considerable weight" and supports preliminary approval of the Settlement. *Marcus v. State of Kansas, Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002).

4. The Settlement Treats Settlement Class Members Equitably.

Finally, the Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). As detailed above, each Settlement Class Member who files a valid and timely claim is eligible to receive a *pro rata* distribution. Thus, there is no preferential treatment for any Settlement Class Members and the proposed Plan of Allocation treats members equitably relative to one another. *See Stanley*, 2024 WL 1743497, at *10 (finding no "disparity in treatment among members of the class" where the "formula for calculating the amounts due is precisely the same for each class member"); *Broockmann v. Bank of Greene Cnty.*, No. 122CV00390AMNATB, 2023 WL 7019273, at *11 (N.D.N.Y. Oct. 25, 2023) (finding that the

requirement that class members be treated equitably relative to each other was satisfied where each class member was to receive a "pro rata share" of the net settlement fund or forgiveness of certain uncollected fees).

## VI. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS.

In order to proceed with the preliminary approval process, it is necessary for the Court to preliminarily certify a class for purposes of the Settlement. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part, that a class action may be maintained if:

> (b)(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

As set forth below, all of the requirements of Rule 23 are met in this case, justifying preliminary certification of the proposed Settlement Class for settlement purposes only.

### A. <u>The Settlement Class Is Sufficiently Numerous.</u>

The Settlement Class satisfies Rule 23(a)(1) because it is "so numerous that joinder of all members is impractical." The Tenth Circuit has held that "[c]lass actions have been deemed viable

where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432 (10th Cir. 1978); *see also Circle v. Jim Walter Homes, Inc.*, 535 F.2d 583 (10th Cir. 1976) (finding class with 358 members sufficiently numerous). Here, the Settlement Class surpasses the threshold requirement to establish numerosity. As the Settlement Agreement indicates, the Settlement Class consists of approximately 126,450 individuals. Settlement Agreement ¶ 1.31. Accordingly, the Settlement Class is sufficiently numerous.

**B. <u>There Are Common Issues of Law or Fact Common to the Settlement Class.</u>**

To certify the Settlement Class, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is established where a class-wide proceeding may "generate common answers apt to drive the resolution of the litigation." *Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted). A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). In fact, "even a single common question will do." *Id.* at 359 (internal quotations omitted).

This Action presents numerous common questions of both law and fact that can be resolved on a class-wide basis. Common questions include but are not limited to: (i) whether Defendant knowingly disclosed Plaintiff's and Settlement Class Members' personally identifiable information; and (2) whether Defendant's conduct violates the VPPA. Accordingly, Rule 23(a)(2) is satisfied.

**C. <u>Plaintiff's Claims Are Typical of the Claims of the Settlement Class.</u>**

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

"A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Stanley*, 2024 WL 1743497, at *4.

Here, Defendant engaged in the same conduct, which Plaintiff alleges violates the VPPA, as to the Plaintiff and all potential Settlement Class Members. Thus, Plaintiff's claims arise from the same set of facts and the same theory of liability as the claims of the potential Settlement Class Members. Rule 23(a)(3) is therefore satisfied.

**D. Plaintiff and Class Counsel Will Fairly and Adequately Represent the Interests of the Settlement Class.**

The requirement of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor,* 521 U.S. 591, 594 (1997); *see also Stanley*, 2024 WL 1743497, at *5 (noting "[t]he adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)"). "Absent evidence to the contrary, a presumption of adequate representation is invoked." *Id*.

Here, as set forth above, Plaintiff and the Settlement Class desire the same outcome of this litigation, namely to cease the practices of Defendant which Plaintiff deems unlawful and retrieve the largest possible monetary recovery from the Defendant. Thus, Plaintiff believes his claims coincide identically with the claims of the Settlement Class. Additionally, because of this, Plaintiff has vigorously prosecuted this case for the benefit of all members of the Settlement Class. Further, there is no conflict or any antagonism between Plaintiff and the Settlement Class. Consequently, Plaintiff has satisfied the adequacy requirement.

Moreover, Plaintiff has retained counsel with significant expertise in complex civil litigation. More specifically, Class Counsel are nationally recognized law firms within the field of complex class action litigation, also having experience in federal and state consumer protection context and representing clients on wide-ranging related matters, including VPPA claims. *See* Decl.

of Class Counsel at ¶¶ 3-8 and Exs. A-C. Class Counsel are well-capitalized, allowing them to dedicate considerable resources to the fullest extent necessary to achieve the best possible result for class members. *Id*. And, as set forth above, Class Counsel have particular expertise in VPPA class action litigation that aided them in resolving this case efficiently for significant value. *Id.* Thus, Class Counsel are unquestionably qualified to undertake this litigation.

**E. The Questions of Law and Fact in this Action Predominate over any Individual Issues, and a Class Action Is the Superior and Most Efficient Means to Adjudicate the Claims.**

Certification is appropriate under Rule 23(b)(3) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem Prods. v. Windsor,* 521 U.S. 591, 591-94 (1997). These requirements are satisfied in this case.

1. Common Questions of Law and Fact Predominate.

In analyzing the predominance factor, the United States Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 622. This is satisfied where the questions that are capable of proof by generalized evidence "are more substantial than the issues subject only to individual proof." *Stanley*, 2024 WL 1743497, at *6. In the settlement context, "the predominance inquiry will sometimes be easier to satisfy" because settlement eliminates manageability problems related to trial. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). As further discussed by the court in *In re Am. Int'l Grp., Inc. Sec. Litig.*:

> '[S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context. A key question in a litigation class action is manageability – how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried. Conversely, other inquiries assume

> heightened importance and heightened scrutiny because of the danger of conflicts of interest, collusion, and unfair allocation.'

*Id*. at 239 (quoting *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 335 (3d Cir. 2011)).

Here, Plaintiff alleges a common course of conduct whereby Defendant knowingly disclosed Settlement Class Members' personally identifiable information. This is the overarching issue in this Action that can be resolved identically for all members of the Settlement Class, thus satisfying the predominance requirement. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 926 (N.D. Ill. 2022), *appeal dismissed sub nom. In re TikTok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) (finding predominance satisfied where class members alleges that they were all subjected to uniform data- and information-harvesting practices as a result of their use of defendant's app.).

2. A Class Action Is the Superior Method of Adjudicating This Case.

The second prong of Rule 23(b) is satisfied by the proposed Settlement. As explained in *Amchem,* "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *In re Am. Int'l Grp., Inc. Sec. Litig,* 689 F.3d at 239 (same). Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

Because Rule 23(a) and 23(b)(3) are satisfied, the Court should provisionally certify the proposed Settlement Class for purposes of settlement and the issuance of notice.

## VII. THE NOTICE PROGRAM IS ADEQUATE AND FULFILLS ALL REQUIREMENT OF RULE 23 AND DUE PROCESS

"When a court determines that a settlement warrants preliminary approval, Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who

would be bound by a proposed settlement.'" *Stanley*, 2024 WL 1743497, at *14 (quoting Fed. R. Civ. P. 23(c)(2)(B)). The notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the proposed Notices meet all the requirements of Rule 23(c)(2)(B) by advising Settlement Class Members of the claims involved in the case; the essential terms of the Settlement, including the definition of the Settlement Class and the monetary and prospective relief; the rights of Settlement Class Members to participate in the Settlement by filing a Claim Form, to request exclusion from the Settlement Class or to object to the Settlement, and specifics on the dates for exercising these rights; the requirements for opting out, for objecting, and for making an appearance at the Fairness Hearing; and the time and place of the Fairness Hearing. Thus, the Notices provide the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Notices also contain information regarding the anticipated amount of Class Counsel's requests for attorneys' fees and litigation expenses, and a Service Award for the Settlement Class Representative.

Moreover, the proposed Settlement requires Plaintiff to notify Settlement Class Members of the proposed Settlement by emailing the Notice to those Settlement Class Members for whom an email address is available in Defendant's records and was made available as part of the Class List. Thus, Settlement Class Members have been identified from Defendant's internal records and shall receive individual notice.

In addition to the emailed Notices, a Settlement Website will be established, which will provide access to the Notice, as well as other key documents related to the Settlement, including the Settlement Agreement, the Court's Preliminary Approval Order, and Class Counsel's application for attorneys' fees, litigation expenses, and a Service Award.

Accordingly, the form and manner of notice proposed here fulfills all of the requirements of Rule 23 and due process. *See Stanley*, 2024 WL 1743497, at *14 (D. Colo. Apr. 23, 2024) (approving notices as reasonable because they "describe the case, the damages to be awarded to each class member, the process by which class members may opt-out or object to the settlement, and informs class members of their right to be heard at a final fairness hearing").

## VIII. CONCLUSION

For these reasons, Plaintiff respectfully requests the Court enter an order: (1) finding it will likely (a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on the proposed Settlement; (2) appointing Plaintiff Benjamin Garcia as Class Representative for the Settlement Class; (3) appointing Allen Carney, Hank Bates, and Sam Jackson of Carney Bates & Pulliam, PLLC; Jacob D. Barney of Anderson & Karrenberg, P.C.; and Mark Reich of Levi & Korsinsky LLP as Class Counsel; (4) directing notice to the Settlement Class and approving the form and manner thereof; (5) setting a schedule for final approval of the Settlement and Plaintiff's request for attorneys' fees and expenses; (6) approving the proposed schedule of events; and (7) scheduling a Fairness Hearing.

Dated: June 23, 2025

Respectfully submitted,

*/s/Allen Carney*

Allen Carney (*pro hac vice*)
acarney@cbplaw.com
Hank Bates (*pro hac vice*)
hbates@cbplaw.com
Sam Jackson (*pro hac vice*)

sjackson@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
Fax: (501) 312-8505

March Reich (to apply for *pro hac vice*)
mreich@zlk.com
Gary Ishimoto (to apply for *pro hac vice*)
gishimoto@zlk.com
**LEVI & KORSINSKY LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Jacob D. Barney (#16777)

**ANDERSON & KARRENBERG**
50 W. Broadway, Suite 600
Salt Lake City, UT 84101
Tel: (801) 534-1700
Fax: (801) 364-7497

***Attorneys for Plaintiff and the Proposed Settlement Class***

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing pleading was filed via the Court's e-filing system on this date on counsel of record.

Date: June 23, 2025

/s/*Allen Carney*
Allen Carney