**CARNEY BATES & PULLIAM, PLLC**
Allen Carney (*pro hac vice*)
acarney@cbplaw.com
Hank Bates (*pro hac vice*)
hbates@cbplaw.com
Samuel Jackson (*pro hac vice*)
sjackson@cbplaw.com
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
Fax: (501) 312-8505

**ANDERSON & KARRENBERG**
Jacob D. Barney (#16777)
50 W. Broadway, Suite 600
Salt Lake City, UT 84101
Tel: (801) 534-1700
Fax: (801) 364-7497

**LEVI & KORSINSKY LLP**
Mark Reich (to apply for *pro hac vice*)
mreich@zlk.com
Gary Ishimoto (to apply for *pro hac vice*)
gishimoto@zlk.com
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff and the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH – CENTRAL DIVISION**

BENJAMIN GARCIA, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

BRIGHAM YOUNG UNIVERSITY d/b/a BYU BROADCASTING

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Judge: Hon: Ann Marie McIff Allen

Mag. Judge: Hon. Daphne A. Oberg

Case No.: 1:24-cv-00188-AMA-DAO

# TABLE OF CONTENTS

I. INTRODUCTION ... 1

II. OVERVIEW OF THE LITIGATION AND SETTLEMENT ... 3

A. Factual and Procedural Background of the Litigation ... 3

B. Summary of the Settlement ... 5

1. The Settlement Class ... 5
2. Monetary Relief ... 5
3. Business Practice Changes ... 6
4. Release ... 6
5. Notice to Settlement Class Members ... 6
6. Attorneys' Fees, Litigation Expenses, and Service Award ... 7

III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT. ... 8

A. Criteria to be Considered in Assessing Whether a Class Action Settlement Is Fair, Reasonable, and Adequate. ... 8

B. The Settlement Class Has Been Vigorously Represented, and the Proposed Settlement Was Fairly and Honestly Negotiated at Arm's Length. ... 9

1. The Settlement Class Was Adequately Represented. ... 10
2. The Proposed Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Meditator After Sufficient Discovery. ... 11

C. The Settlement is an Excellent Result for the Settlement Class, and Consideration of the Risks of Continued Litigation, the Effectiveness of the Proposed Distribution Method, the Anticipated Application for Attorneys' Fees, and the Lack of any Side Agreement Favor Final Approval. ... 13

1. The Complexity, Expense, and Duration of Litigation Through Trial and Appeal. ... 13
2. The Settlement Provides Significant and Immediate Relief to Settlement Class Members. ... 15
3. The Proposed Method of Distributing Relief to the Settlement Class is Effective. ... 17
4. Plaintiff and Class Counsel Believe the Settlement and the Requested Attorneys' Fees Are Fair and Reasonable. ... 17
5. The Lack of an Agreement Required to be Identified under 23(e)(3). ... 19

D. The Settlement Treats All Settlement Class Members Equitably. ... 19

E. The Reaction of the Settlement Class Further Supports Final Approval. ... 19

IV. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED. .......... 20

V. THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e) AND THE PRINCIPLES OF DUE PROCESS. .......... 21

VI. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Cases**

*Alvarado Partners, L.P. v. Mehta*,
723 F.Supp. 540 (D. Colo. 1989) ........ 11

*Broockmann v. Bank of Greene Cnty.*,
2023 WL 7019273 (N.D.N.Y. Oct. 25, 2023) ........ 20

*CO Craft, LLC v. Grubhub Inc.*,
2023 WL 3763525 (D. Colo. June 1, 2023) ........ 10

*Commodity Futures Trading Comm'n v. Rust Rare Coin, Inc.*,
2020 WL 4904165 (D. Utah Aug. 20, 2020) ........ 18

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ........ 10

*DeJulius v. New England Health Care Emp. Pension Fund*,
429 F.3d 935 (10th Cir. 2005) ........ 23

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ........ 22

*Florence v. Jose Pepper's Rest., LLC*,
2021 WL 5042715 (D. Kan. Oct. 29, 2021) ........ 9

*Grady v. De Ville Motor Hotel, Inc.*,
415 F.2d 449 (10th Cir. 1969) ........ 8

*In re Credit Default Swaps Auctions Litig.*,
2024 WL 264035 (D.N.M. Jan. 24, 2024) ........ 8

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
2023 WL 8443230 (N.D. Cal. Oct. 10, 2023) ........ 15

*In Re King Resources Co. Securities Litig.*,
420 F. Supp. 610 (D. Colo. 1976) ........ 9

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
625 F. Supp. 2d 1133 (D. Colo. 2009) ........ 15

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018) ........ 23

*Jones v. Nuclear Pharmacy, Inc.*,
741 F.2d 322 (10th Cir. 1984)........................................................................ 9, 13, 18, 19

*KPH Healthcare Servs., Inc. v. Mylan, N.V.*,
2024 WL 3360499 (D. Kan. July 9, 2024).............................................................. 17, 18

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006).............................................................................. 15

*Marcus v. State of Kansas, Dept. of Revenue*,
209 F.Supp.2d 1179 (D. Kan. 2002) ..................................................................... 9, 11

*Pan v. Atlas Real Est. Grp. LLC*,
2024 WL 5678049 (D. Colo. Nov. 7, 2024), *report and recommendation adopted*,
2024 WL 5678050 (D. Colo. Dec. 3, 2024).............................................................. 12

*Sagacity, Inc. v. Cimarex Energy Co.*,
2024 WL 2922971 (E.D. Okla. June 10, 2024)......................................................... 22

*Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*,
2024 WL 1743497 (D. Colo. Apr. 23, 2024) ............................................................ 19

*Suaverdez v. Circle K Stores, Inc.*,
2021 WL 4947238 (D. Colo. June 28, 2021), *report and recommendation adopted*,
2021 WL 5513740 (D. Colo. Oct. 19, 2021) ....................................................... 12, 14

*Tuten v. United Airlines, Inc.*,
41 F. Supp. 3d 1003 (D. Colo. 2014) ...................................................................... 20

*Valencia v. Greater Omaha Packing*,
2014 WL 284461 (D. Neb. Jan. 23, 2014) ............................................................... 18

*Voulgaris v. Array BioPharma Inc.*,
2021 WL 6331178 (D. Colo. Dec. 3, 2021).............................................................. 10

*Wilkerson v. Martin Marietta Corp.*,
171 F.R.D. 273 (D. Colo. 1997).............................................................................. 11

*Williams v. Sprint/United Management Co.*,
2007 WL 2694029 (D. Kan. Sept. 11, 2007) ............................................................ 10

**Statutes**

18 U.S.C. § 2710 .......... 3

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.) .......... 9
FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE .......... 22
Herbert B. Newberg & William B. Rubenstein, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:44 (6th ed. 2022) .......... 8, 9
MOORE'S FEDERAL PRACTICE, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1997) .......... 10

**Rules**

Fed R. Evid. 408 .......... 4
Fed. R. Civ. P. 23 .......... 1, 4, 21, 23
Fed. R. Civ. P. 23(c) .......... 23
Fed. R. Civ. P. 23(e) .......... passim
Fed. R. Civ. P. 23(e)(2) .......... 8, 9
Fed. R. Civ. P. 23(e)(2)(A) .......... 9
Fed. R. Civ. P. 23(e)(2)(B) .......... 9
Fed. R. Civ. P. 23(e)(2)(C) .......... 13
Fed. R. Civ. P. 23(e)(2)(C)(i) .......... 14, 19
Fed. R. Civ. P. 23(e)(2)(C)(iii) .......... 18
Fed. R. Civ. P. 23(e)(2)(C)(iv) .......... 19
Fed. R. Civ. P. 23(e)(2)(D) .......... 19
Fed. R. Civ. P. 23(e)(3) .......... 19

## I. INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and the Court's Order Granting Preliminary Approval of Class Action Settlement, dated July 18, 2025 (Dkt. No. 42) (the "Preliminary Approval Order"), Plaintiff Benjamin Garcia, on behalf of himself and all others similarly situated ("Plaintiff" or "Settlement Class Representative") respectfully submits this memorandum of law in support of final approval of the proposed settlement (the "Settlement") of this class action (the "Action").

The Settlement[1] before the Court resolves all claims against Defendant Brigham Young University d/b/a BYU Broadcasting ("BYU" or "Defendant," and collectively with the Plaintiff, the "Parties") in exchange for a cash payment of $1,548,495.00 (the "Settlement Fund") for the benefit of the Settlement Class.[2] None of the Settlement Fund will revert to Defendant. Instead, each Settlement Class Member who submits a valid claim will be eligible to receive a pro rata distribution from the Settlement Fund after payment of settlement administration fees, counsel fees and expenses, and service awards.

This is a good result, in the best interests of the Settlement Class, and satisfies the criteria for final approval as discussed herein. No Settlement Class Member or governmental entity has objected to date.[3] The Settlement is the product of arm's-length negotiations by experienced and informed counsel who understand the strengths and weaknesses of their clients' respective claims and defenses, and it was reached only after extensive investigation of Plaintiff's claims and

---

[1] The Settlement Agreement was previously filed with the Court on June 23, 2025, as part of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* Dkt. No. 41; *see also* Dkt. No. 45 (order granting joint motion to reflect amended settlement value of $1,548,495.00).

[2] All capitalized terms not defined herein are defined in the Settlement Agreement.

[3] The deadline for filing requests for exclusion and objections is October 14, 2025.

Defendant's defenses, informal discovery, and a full-day mediation session before the Honorable Freda L. Wolfson, U.S.D.J. (Ret.).

Although Plaintiff is confident in the merits of the claims alleged, Defendant has defenses that add substantial risk to Plaintiff's ability to prevail at key benchmarks for the case—*e.g.*, motion to dismiss, class certification, interlocutory appeal thereof, motion for summary judgment, *Daubert* challenges, trial, and post-trial appeal. Plaintiff fully considered and appreciated such risks going into and during the mediation. Accordingly, the terms and conditions of the Settlement were fairly negotiated and reflect a fully informed and fair compromise.

By separate motion, Class Counsel are requesting attorneys' fees of one-third of the Settlement, as well as reimbursement of litigation expenses in the amount of $15,562.21. Additionally, Plaintiff is requesting a service award in the amount of $5,000 for recognition of his service as the Settlement Class Representative. These amounts are fair and reasonable based upon, among other things, the time and labor expended; the results achieved; the novelty and difficulty of the legal issues and technical matters presented; the skill and effort required to obtain such relief; the customary and contingent nature of the fee; the risks assumed; and awards in similar actions.

The notice plan for this action was successfully implemented in accordance with the Preliminary Approval Order and the Settlement Agreement, as amended by this Court's August 11, 2025 Order. Dkt. No. 45. After two rounds of individual email notice, notice is estimated to have reached at least 94% of potential Settlement Class Members. *See* Declaration of Settlement Administrator Simpluris, Inc. in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Simpluris Declaration) at ¶¶ 10–11, 15. Additionally, the Settlement enjoys the support of the Settlement Class. As stated above, as of September 29, 2025, no Settlement Class

Member has filed an objection to the Settlement, and no Settlement Class Member has filed a request for exclusion from the Settlement. *Id.* at ¶¶ 17–20.

Accordingly, Plaintiff respectfully submits that the Settlement satisfies all criteria for final approval, and specifically requests this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) grant final certification to the Settlement Class; and (iii) find that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order and the Court's August 11, 2025 order satisfies the requirements of FRCP 23(c) and due process and constitutes the best notice practicable under the circumstances.

## II. OVERVIEW OF THE LITIGATION AND SETTLEMENT

### A. Factual and Procedural Background of the Litigation

On November 12, 2024, Plaintiff filed a putative class action complaint against Defendant in the United States District Court for the District of Utah alleging violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA"). Dkt. No. 2. The material allegations of the Complaint center on Defendant's alleged disclosure of its subscribers' personally identifiable information ("PII"), as defined under the VPPA, to Meta (formerly, Facebook) without consent by installing the Meta Pixel on its websites.

On January 17, 2025, Defendant filed a Motion to Dismiss Plaintiff's Complaint. Dkt. No. 22. On February 14, 2025, Plaintiff filed an opposition to Defendant's Motion to Dismiss. Dkt. No. 23. On February 28, 2025, Defendant filed its reply in further support of its Motion to Dismiss. Dkt. No. 27.

On April 16, 2025, the Parties filed a Joint Stipulation to Stay Pending Outcome of Mediation, informing the Court that they had agreed to mediation before the Honorable Freda L.

Wolfson (Ret.) on May 9, 2025, and requesting the Court to stay all proceedings to May 30, 2025 (Dkt. No. 32), which the Court granted (Dkt. No. 33).

On May 9, 2025, the Parties attended an all-day mediation with the Honorable Freda L. Wolfson (Ret.). As part of the mediation process, the Parties submitted mediation statements and exchanged informal discovery regarding the merits of the case and class certification under Fed. R. Civ. P. 23 and Fed R. Evid. 408. The mediation resulted in a settlement in principle.

On May 29, 2025, the Parties filed a Joint Status Report, wherein the Parties informed the Court that as a result of a full-day mediation session before the Honorable Freda L. Wolfson (Ret.), the Parties were able to reach an agreement in principle to resolve this matter. Dkt. No. 34. As such, the Parties asked the Court to extend the stay in this matter to and through June 9, 2025, on which date Plaintiff would either file a motion for preliminary approval of the Settlement or provide a further status update to the Court (*see id.*), which the Court granted. Dkt. No. 35.

On June 9, 2025, the Parties filed a joint motion for extension of the stay to and through June 23, 2025 (Dkt. No. 36), while they continued to diligently work together on finalizing the Settlement Agreement and related exhibits, selecting a settlement administrator, and consulting with the settlement administrator to ensure the Settlement Agreement includes an optimal notice plan. The Court granted the Joint Motion. Dkt. No. 37.

On June 23, 2025, Plaintiff filed his Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. Nos. 38-41), which the Court granted on July 18, 2025 (Dkt. No. 42).

Following entry of the Court's Preliminary Approval Order, the Parties filed a Joint Motion to Amend Email Notice and Long Form Notice Documents (Dkt. No. 44), which the Court granted (Dkt. No. 45).

**B. Summary of the Settlement**

1. The Settlement Class

The Settlement Agreement defines the Settlement Class as follows:

> All individuals who, as persons in the United States, (1) had a Facebook account during the Class Period; (2) had a subscription (i.e., login credentials) to https://www.byutv.org during the Class Period; and (3) viewed videos on www.byutv.org during the Class Period.

Settlement Agreement ¶ 1.29. The Settlement Class specifically excludes: counsel to the Settling Parties, and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; Defendant, any entity in which Defendant has a controlling interest, any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; any persons who, as of the date of the Settlement Agreement, have asserted claims against Defendant under the VPPA through counsel other than Class Counsel; any persons who have released claims relating to the Action; the Honorable Freda L. Wolfson; and any persons who properly execute and timely request exclusion from the Settlement Class. *Id.*

Based on a review of BYU's records, the Settlement Class is estimated to include approximately 156,662 subscribers. *See* Dkt. No. 45. The benefits provided for in the Settlement and described below are based on the class definition and provide for a pro rata distribution to Settlement Class Members.

2. Monetary Relief

BYU has agreed to pay $1,548,495.00 to create a non-reversionary Settlement Fund for the benefit of Settlement Class Members.[4] Settlement Class Members who submit valid claims will

[4] ¶ 1.32 of the Settlement Agreement provided for a $1,250,000 Settlement Fund (Dkt. No. 41). On August 7, 2025, the Parties jointly moved to amend the Email Notice and Long Form Notice Documents pursuant to ¶ 1.32 of the Settlement Agreement to reflect an increase in the Settlement

receive a pro rata payment after the deduction of settlement-related costs, including Settlement Administrative Expenses, any court-awarded attorneys' fees and expenses, and any court-awarded Service Award. *Id.* at ¶¶ 1.26, 1.27, and 2.1.

3. Business Practice Changes

Defendant has also agreed to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward. More specifically, Defendant has agreed to suspend operation of the Meta Pixel on any pages on its website that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA is amended, repealed, or otherwise invalidated by judicial decision as applied to the use of website pixel technology, or until Defendant obtains VPPA-compliant consent that would apply to disclosure of the video content viewed to Meta. *Id.* at ¶ 2.2. Nothing about this provision prevents the use of the Meta Pixel where the disclosure of information to Meta does not identify specific video materials that a user has viewed or Defendant has obtained VPPA-compliant consent. *Id.*

4. Release

In exchange for the relief described above, Plaintiff and the Settlement Class shall release all claims that have or could have been asserted against Defendant, relating to the facts, transactions, or events alleged in this Action. *See id*. at ¶ 1.23 (Released Claims), ¶ 1.24 (Released Parties), and ¶ 7.4.

5. Notice to Settlement Class Members

In accordance with Section 4 of the Settlement Agreement, the Court's Preliminary Approval Order, and the Court's August 11, 2025 Order (Dkt. No. 45), individual notice of the proposed Settlement was made by two rounds of Email Notice to all potential Settlement Class

---

Fund to $1,548,495 triggered by an increase in class size by greater than 5% (Dkt. No. 44), which the Court granted (Dkt. No. 45).

Members for whom a valid email address is available in the Class List or for whom a valid email address was obtained through skip tracing. *See* Simpluris Declaration at ¶¶ 10 –11.

The Notice included the following information: (1) a description of the class action and the proposed Settlement, (2) the rights of Settlement Class Members, including the rights to request exclusion from the Settlement Class, to object to the Settlement, and to file a claim form, and instructions about how to exercise those rights, (3) specifics on the date, time and place of the Final Approval Hearing, and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Settlement Class Representative service award. *See id.* at ¶ 7 and Ex. B.

The Notice also included a link for the Settlement Website, https://garciavideoprivacyclassaction.com/, which included the following: (1) a more detailed Long Form Notice and Claim Form; (2) a "Contact Us" page with the Settlement Administrator's contact information; (3) important case documents, including the Settlement Agreement and the Court's Preliminary Approval Order; (4) important case dates and deadlines, including the deadlines to file a claim, opt out, and object; (5) a summary of Settlement Class Members' options; and (6) the date, time, and location of the Final Approval Hearing. *See id.* at ¶ 13 and Exs. C –D.

6. Attorneys' Fees, Litigation Expenses, and Service Award

In accordance with the Settlement Agreement, Class Counsel is requesting an award of attorneys' fees equal to one-third of the Settlement Fund to compensate them for the work already performed in this case, all the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Class Counsel is also seeking reimbursement of their out-of-pocket litigation costs in the amount of $15, 562.21, as well as a service award for the Settlement Class Representative, in the amount of $5,000, to compensate him for his work on

behalf of the Settlement Class. *See* Plaintiff's Motion for Attorneys' Fees, filed contemporaneously herewith. The enforceability of the Settlement Agreement is not contingent on the Court's approval of Plaintiff's Motion for Attorneys' Fees, and any award granted by the Court will be paid out of the Settlement Fund.

## III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT.

### A. Criteria to be Considered in Assessing Whether a Class Action Settlement Is Fair, Reasonable, and Adequate.

Federal Rule of Civil Procedure 23(e) requires court approval of a proposed class action settlement upon a finding that the settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2). Strong judicial policy favors resolution of litigation short of trial, particularly in class action suits. *Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969) ("It is well settled, as a matter of sound policy, that the law should favor the settlement of controversies[.]"); *In re Credit Default Swaps Auctions Litig.*, No. 1:21-CV-0606 KG/DLM, 2024 WL 264035, at *7 (D.N.M. Jan. 24, 2024) (noting that "[t]he Tenth Circuit has [ ] recognized the importance of th[is] policy for over 50 years"); *see also* Herbert B. Newberg & William B. Rubenstein, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:44 (6th ed. 2022) (hereinafter "Newberg") ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

Courts in the Tenth Circuit have sound discretion whether to approve a class action settlement. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). The standard for granting final approval pursuant to Fed. R. Civ. P. 23(e)(2) is determining whether the settlement is "fair, reasonable and adequate" to the class as a whole. *In Re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976); NEWBERG § 13:42.. In making this overall determination, the Tenth Circuit considers: (i) whether the proposed settlement was fairly and

honestly negotiated; (ii) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (iii) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (iv) the judgment of the parties that the settlement is fair and reasonable. *Jones*, 741 F.2d at 324 (setting forth the "*Jones* factors"). Each of these factors supports final approval of the Settlement.

**B. The Settlement Class Has Been Vigorously Represented, and the Proposed Settlement Was Fairly and Honestly Negotiated at Arm's Length.**

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also Jones*, 741 F.2d at 324 (overlapping with the first *Jones* factor, i.e., whether the proposed settlement was fairly and honestly negotiated). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.); *Marcus v. State of Kansas, Dept. of Revenue*, 209 F.Supp.2d 1179, 1182–83 (D. Kan. 2002); *Florence v. Jose Pepper's Rest., LLC*, No. 20-2339, 2021 WL 5042715, at *5 (D. Kan. Oct. 29, 2021) (approving class action settlement where "the parties are represented by qualified and experienced counsel who believe the settlement is fair, reasonable, and adequate." (internal quotation omitted)); *see also* MOORE'S FEDERAL PRACTICE, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42, at 266 (1997) (a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery"). Indeed, when experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *Voulgaris v. Array BioPharma Inc.*, No. 17-cv-02789, 2021 WL 6331178, at *9 (D. Colo. Dec. 3, 2021). Although a trial court must consider the terms of a class action settlement, "absent fraud,

collusion, or the like, [the Court] should hesitate to substitute its own judgment for that of counsel." *Williams v. Sprint/United Management Co.*, No. 03-2200-JWL, 2007 WL 2694029, at *4 (D. Kan. Sept. 11, 2007) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

1. The Settlement Class Was Adequately Represented.

In assessing adequacy of representation, courts focus on two questions: "(1) whether named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class." *CO Craft, LLC v. Grubhub Inc.*, No. 20-CV-01327-NYW-NRN, 2023 WL 3763525, at *12 (D. Colo. June 1, 2023) (further noting that "[a]dequate representation is usually presumed in the absence of contrary evidence").

Here, Plaintiff's interests are aligned with the interests of Settlement Class Members as, during the Class Period, he alleges he was a BYUtv subscriber that accessed BYU's website to watch video content, and alleges he suffered the same alleged injury (the improper disclosure of personally identifiable information without consent) and has the same interest in securing relief for the alleged VPPA violation. Thus, there is no conflict between Plaintiff and the members of the Settlement Class.

Further, Class Counsel have vigorously and adequately represented the Settlement Class. Class Counsel are highly qualified, have extensive experience and knowledge in prosecuting similar consumer class actions, particularly those involving privacy violations, including those under the VPPA. *See* Joint Declaration of Sam Jackson, Mark Reich, and Jacob Barney in Support of (i) Motion for Final Approval of Class Action Settlement, and (ii) Motion for Attorneys' Fees, Litigation Costs, and Service Award ("Joint Decl. of Class Counsel") at ¶ 28. Moreover, Class Counsel performed significant work in identifying, litigating, and negotiating the settlement of the

claims in this Action, including engaging in extensive factual investigation and forensic analysis of Defendant's website and its use of cookie and pixel technologies; drafting the complaint; engaging in informal discovery; and participating in a full-day mediation. *Id.* at ¶¶ 28–30. Accordingly, this factor weighs in favor of final approval. *See Marcus*, 209 F.Supp.2d at 1184 (granting final approval where settlement was negotiated by experienced counsel with many years of civil litigation experience).

2. The Proposed Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Meditator After Sufficient Discovery.

"The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 546 (D. Colo. 1989). Considering the posture of the case and the circumstances surrounding the negotiations allows the Court to determine whether the agreement is a product of fraud, overreaching, or collusion. *See Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997). The assistance of an experienced, neutral mediator weighs in favor of the reasonableness of the settlement. *See Pan v. Atlas Real Est. Grp. LLC*, No. 23-CV-00910-DDD-KAS, 2024 WL 5678049, at *7 (D. Colo. Nov. 7, 2024), *report and recommendation adopted*, No. 1:23-CV-00910-DDD-KAS, 2024 WL 5678050 (D. Colo. Dec. 3, 2024) (finding factor that "parties were represented by experienced counsel and utilized an outside mediator [ ] weighs heavily in favor of a finding that the settlement was fairly and honestly negotiated"); *Suaverdez v. Circle K Stores, Inc.*, No. 20-CV-01035-RM-NYW, 2021 WL 4947238, at *7 (D. Colo. June 28, 2021), *report and recommendation adopted*, No. 120CV01035RMRNYW, 2021 WL 5513740 (D. Colo. Oct. 19, 2021) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.").

Here, the Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself, the adversarial nature of the negotiations, and the involvement of an experienced mediator. The Parties engaged in a day-long private mediation before the Honorable Freda L. Wolfson (Ret.), an experienced neutral mediator, to assist them in reaching the proposed Settlement. Joint Decl. of Class Counsel at ¶¶ 8 and 28. In furtherance of their arms-length negotiations, the Parties prepared and reviewed detailed mediation statements and other supporting materials prior to the mediation. *Id*. at ¶ 8. Even after reaching an agreement-in-principle, the Parties engaged in additional arms-length negotiations over the next several weeks to finalize the terms and conditions of the Settlement Agreement and the exhibits attached thereto. *Id*. at ¶¶ 9–11. These efforts were at arms-length and non-collusive. Moreover, the Settlement itself bears no indicia of collusion as attorneys' fees were negotiated separately after relief to the class was determined, there is no "clear sailing" provision, and the Settlement Fund does not revert to BYU.

Prior to mediation, Class Counsel performed extensive and detailed investigation of the facts supporting Plaintiff's allegations—facts which required intensive forensic analysis of backend website communications requiring highly specialized skills to identify individual network transmissions among hundreds to determine whether such internet communications violated the privacy of Plaintiff and the Class Members—and of the defenses available to Defendant, which are equally complex to the extent a large variety of factors can complicate issues of class certification and the merits of these kinds of cases. *See* Joint Decl. of Class Counsel at ¶¶ 28–30.

Further, Class Counsel engaged in informal discovery, and by doing so obtained information bearing on the merits of Plaintiff's claims and the size of the class. *See* Joint Decl. of Class Counsel at ¶¶ 8 and 29. Thus, during negotiations, Class Counsel—attorneys with

considerable experience in assessing the strengths and weaknesses of VPPA cases—were well-informed about the strengths and risks of Plaintiff's claims, as well as their value.

Accordingly, this factor also supports final approval of the Settlement.

**C. The Settlement is an Excellent Result for the Settlement Class, and Consideration of the Risks of Continued Litigation, the Effectiveness of the Proposed Distribution Method, the Anticipated Application for Attorneys' Fees, and the Lack of any Side Agreement Favor Final Approval.**

Next, the Court must assess whether the relief provided to the Settlement Class is adequate, taking into consideration the following four factors: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." *See* Rule 23(e)(2)(C); *see also Jones*, 741 F.2d at 324 (overlapping with *Jones* factors two, three, and four).

1. The Complexity, Expense, and Duration of Litigation Through Trial and Appeal.

Rule 23(e)(2)(C)(i) first requires courts to consider "the costs, risks, and delay of trial and appeal." This inquiry overlaps with the second *Jones* factor, i.e. "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt."

Continued litigation of this Action would be complex, expensive, and lengthy. In *Circle K Stores, Inc.*, the court noted, "[t]rial of any case, let alone a class action, is inherently risky." 2021 WL 4947238, at *7. The court further noted that this risk is heightened where, as here, the "case is still in an early enough stage" and "proceeding to trial runs the risk of delaying the [p]arties' resolution of th[e] case by several months, if not longer." *Id.*

Here, at the time the Settlement was reached, there was a pending Motion to Dismiss, and class certification discovery and briefing had not yet taken place. Thus, if litigation were to

continue, Plaintiff would be faced with the hurdles of surviving Defendant's Motion to Dismiss and achieving and maintaining class certification through trial and any potential appeal. The risk of maintaining class status through trial in this Action is significant. As noted above, such a determination would only be reached after additional first- and third-party discovery, and exhaustive briefing. Additionally, if the Court were to determine that statutory damages could not be imposed on a class-wide basis, there is a risk that individualized damages determinations would overwhelm the common issues. And, even if the Court were to certify the Class (and deny efforts to decertify it thereafter), BYU would likely seek appellate review of this Court's interlocutory decisions, adding further delay.

Further litigation would also entail summary judgment motions, *Daubert* briefing, and a lengthy trial. The Parties would likely have retained expensive forensics and other experts for class certification, summary judgment, and trial. Plaintiff would also have to conduct additional formal discovery, which would involve the uncertain process of obtaining relevant information from BYU and pursuing subpoenas against third-party Meta. Thus, continued litigation would pose significant risks, time, and costs.

Additionally, success at trial is far from certain. Defendant raised multiple defenses to liability, including those arising under the statutory text and Plaintiff's consent to Facebook's terms of use and service, and Defendant would have likely appealed any adverse verdict. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risks of trial and appeal and of receiving a recovery less than that offered through Settlement, or the possibility of receiving no relief at all. Because of this, it is reasonable to conclude "that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated," and thus, settlement is a favorable alternative to

continued litigation. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006); *see In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC, 2023 WL 8443230, at *3 (N.D. Cal. Oct. 10, 2023) (discussing due-process concerns raised by statutory damages in the VPPA context); *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) ("The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

In sum, Plaintiff believes in the merits of his case and Defendant equally believed in the merits of its defenses. By reaching a favorable settlement with the assistance of a neutral mediator Plaintiff avoided significant expense and delay and the risks of trial and appeal. Consideration of these factors sharply weighs in favor of final approval.

2. <u>The Settlement Provides Significant and Immediate Relief to Settlement Class Members.</u>

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective," while Rule 23(e)(2)(C)(iv) requires identification of any agreement under Rule 23(e)(3). Similarly, the third *Jones* factor focuses on "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Jones*, 741 F.2d at 324.

Here, the Settlement provides a common fund of $1,548,495.00 for the benefit of the 156,662 Settlement Class Members, which equates to roughly $9.88 per Settlement Class Member before deduction of costs and fees. This is a great result when compared to other settlements approved in the VPPA context. *See, e.g., In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (VPPA settlement providing $16.50 per claim); *Feldman v. Star Tribune Media Company LLC*, 0:22-CV-01731, slip opinion

(June 17, 2024) ($2,900,000 VPPA settlement yielding per settlement class member recoveries of $9.67); *Sellers, et al. v. Bleacher Report, Inc.*, 2024-003537-CA-01, slip opinion (August 8, 2024) (granting final approval to $4,800,000 VPPA settlement yielding per settlement class member recoveries of $1.78); *see also In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1117 (9th Cir. 2021) (affirming district court's finding that "injunctive relief, together with the indirect benefits conferred by the *cy pres* provisions, was fair, reasonable, and adequate compensation to the class members").

In addition to these monetary benefits, Defendant has agreed to implement meaningful business practice changes. This is the same injunctive relief Plaintiff would have sought through trial. Thus, the benefits achieved through the Settlement fall well within the range of a reasonable settlement. *KPH Healthcare Servs., Inc. v. Mylan N.V.*, No. 20-2065-DDC-TJJ, 2025 WL 416282, at *2 (D. Kan. Feb. 6, 2025) (approving settlement where it, among other things, was "within the range of possible approval").

Moreover, the Settlement guarantees Settlement Class Members immediate monetary and prospective relief now without the risks and uncertainties of continued litigation, which certainly outweighs the mere possibility of future relief after lengthy and expensive litigation. *See KPH Healthcare Servs., Inc. v. Mylan, N.V.*, No. 20-2065-DDC-TJJ, 2024 WL 3360499, at *2 (D. Kan. July 9, 2024) ("The Settlement provides the Class Members with immediate recovery for claimed injuries allegedly derived from purchases of EpiPens. And this immediate recovery is more valuable than a 'mere possibility' that Class Members might achieve a more favorable outcome 'after protected and expensive litigation' that may well last 'many years in the future.'"); *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held

proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotation marks omitted).

3. The Proposed Method of Distributing Relief to the Settlement Class is Effective.

Any Settlement Class Member that submits a valid claim is entitled to a pro rata share of the $1,548,495.00 Settlement Fund after the deduction of notice and administration costs, any court-awarded attorneys' fees and expenses, and any court-awarded Service Awards. No funds revert to Defendant. Claim Forms shall be submitted to a third-party administrator for processing and approval. Further, the claims process involves a simple and straightforward Claim Form, written in plain language to encourage Settlement Class Members to file claims. The Claim Form is streamlined, requiring only the minimal information necessary to confirm membership in the Settlement Class and to direct financial payments to Settlement Class Members without requiring the submission of additional documents. *See* Simpluris Decl. at Ex. D. Furthermore, all Settlement Class Members will also benefit from the business practice changes. Thus, the proposed methods of distribution are fair and effective. *See Commodity Futures Trading Comm'n v. Rust Rare Coin, Inc.*, No. 2:18-CV-00892, 2020 WL 4904165, at *1 (D. Utah Aug. 20, 2020) ("In crafting a distribution plan, courts frequently favor a pro rata distribution of funds[.]"); *Valencia v. Greater Omaha Packing*, No. 8:08CV161, 2014 WL 284461, at *3 (D. Neb. Jan. 23, 2014) (finding a pro rata distribution to the class was fair and equitable).

4. Plaintiff and Class Counsel Believe the Settlement and the Requested Attorneys' Fees Are Fair and Reasonable.

Under Rule 23(e)(2)(C)(iii), this Court is also to consider the "terms of any proposed award of attorney's fees, including timing of payment." Similarly, the fourth *Jones* factor examines "the judgment of the parties that the settlement is fair and reasonable."

First, as set forth above, under the Settlement, any Settlement Class Member who submits a valid claim is entitled to a pro rata share of the Net Settlement Fund (*i.e.*, the Settlement Fund less any court-approved attorneys' fees and expenses, service awards, and costs of settlement notice and administration), and no funds will revert to Defendant. Even without taking into account expected claim rates, based on the Settlement Class size of 156,662 Settlement Class Members, the Settlement Fund of $1,548,495.00 equates to roughly $9.88 per Settlement Class Member before deduction of costs and fees. This is a good result. *See supra.*

Second, Class Counsel has contemporaneously filed a Motion for Attorneys' Fees that seeks an award of attorneys' fees and litigation expenses that are reasonable compared to the benefits Class Counsel have achieved for Settlement Class Members, the experience and ability of Class Counsel, and similar fee awards in the Tenth Circuit. *See, e.g., KPH Healthcare Servs.*, 2024 WL 3360499, at *4 (awarding attorneys' fees in the amount of one-third of the Settlement Amount as reasonable); *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*, No. 1:22-CV-01176-RM-SBP, 2024 WL 1743497, at *9 (D. Colo. Apr. 23, 2024) (stating attorneys' fees of one-third of the settlement fund "plus reasonable out-of-pocket costs" "are typical of those commonly found reasonable in class settlements," and further stating service awards of $10,000 "are typical in class action settlements"). The Settlement is in no way contingent on this Court awarding the full award requested, and Class Counsel will not receive any funds until after notice is made to the Settlement Class and the Court has entered an order addressing their fee request.

Plaintiff's Motion for Attorneys' Fees also seeks a service award to Plaintiff in the amount of $5,000 for serving as the Settlement Class Representative in this Action, which is both reasonable and consistent with similar awards approved in the Tenth Circuit. *See id*. at *14.

5. The Lack of an Agreement Required to be Identified under 23(e)(3).

Lastly, there are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3). Accordingly, consideration of Rule 23(e)(2)(C)(i) through (iv) and the second, third, and fourth *Jones* factors weigh in favor of final approval.

**D. The Settlement Treats All Settlement Class Members Equitably.**

Finally, the Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). The Settlement is designed to benefit all Settlement Class Members equally and equitably, by providing equal access to the Settlement Fund and providing meaningful remedial relief to all Settlement Class Members. Each Settlement Class Member may submit only one claim for monetary relief. Accordingly, each claimant that submits a valid claim will receive the same pro rata share of the Net Settlement Fund. Moreover, because the remedial relief occurs via BYU and is not user specific, all Settlement Class Members are entitled to receive the same remedial relief. Thus, there is no unfair or preferential treatment of any Settlement Class Member, and this factor weighs in favor of final approval. *See Stanley*, 2024 WL 1743497, at *10 (finding no "disparity in treatment among members of the class" where the "formula for calculating the amounts due is precisely the same for each class member"); *Broockmann v. Bank of Greene Cnty.*, No. 122CV00390AMNATB, 2023 WL 7019273, at *11 (N.D.N.Y. Oct. 25, 2023) (finding that the requirement that class members be treated equitably relative to each other was satisfied where each class member was to receive a "pro rata share" of the net settlement fund or forgiveness of certain uncollected fees).

**E. The Reaction of the Settlement Class Further Supports Final Approval.**

To date, no Settlement Class Member has filed an objection to the terms of the Settlement, and no Settlement Class Member has requested to be excluded from the Settlement. *See* Simpluris

Decl. at ¶¶ 17–20. Settlement Class Members have until October 14, 2025, to request exclusion or to object to the Settlement. *See id*. Class Counsel will update the Court after that deadline and prior to the Final Approval Hearing.

The Settlement Administrator has been processing claims as they are received, and to date has processed a total of 998 Claim Forms. *Id.* at ¶ 16. The Settlement Administrator will continue to process Claim Forms through the claims submission period, and Class Counsel will provide the Court with updated numbers at the expiration of that deadline and prior to the Final Approval Hearing.

The lack of any objections and requests for exclusion further weighs in favor of final approval. *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1008 (D. Colo. 2014) (granting final approval where the parties represented their opinions that the settlement was fair and reasonable and where there were no objections filed by any class members).

## IV. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED.

In its Preliminary Approval Order, this Court previously determined that certification of the action for settlement purposes is appropriate. Specifically, the Court found that the Settlement Class satisfied each of the requirements of Federal Rule of Civil Procedure 23 in that (a) the Settlement Class is sufficiently numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to members of the Settlement Class that predominate over questions affecting only individual members (e.g., whether BYU disclosed to third parties Plaintiff's and Settlement Class Members' personally identifiable information without consent in a manner that violated the VPPA, and whether Plaintiff and the Settlement Class Members are entitled to uniform statutory damages under the VPPA); (c) Plaintiff's claims are typical of the claims of the Settlement Class, and Plaintiff and Class Counsel will fairly and adequately protect

the interests of the Settlement Class; and (d) a settlement class action is the superior method for fairly and efficiently adjudicating this Action. *See* Preliminary Approval Order (Dkt. No. 42) at ¶ 7. For these same reasons, this Court should finally certify the Settlement Class for settlement purposes.

## V. THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e) AND THE PRINCIPLES OF DUE PROCESS.

Fed. R. Civ. P. 23(e) requires that notice of a proposed compromise of a class action be given to all members of the class in such manner as the court directs. Generally, notice need only (i) be "the best practicable notice under the circumstances;" (ii) be "reasonably calculated under the circumstances to apprise the Class Members of the pendency of the Litigation, their right to exclude themselves from the Settlement, their right to object to the Settlement or any part thereof, and their right to appear at the Final Fairness Hearing;" (iii) be "reasonable and constitute[] due, adequate, and sufficient notice to all persons and entities entitled to such notice;" and (iv) meet "all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law[.]" *See Sagacity, Inc. v. Cimarex Energy Co.*, No. CIV-17-101-GLJ, 2024 WL 2922971, at *2 (E.D. Okla. June 10, 2024).

Here, notice was accomplished through (i) two rounds of direct email notice to all Settlement Class Members via the email address they used to create a login to BYU's services; (ii) the establishment of a Settlement Website where Settlement Class Members can view the Settlement, the Long-Form Notice, and other key case documents; and (iii) the establishment of a toll-free number where Settlement Class Members can obtain additional information. *See* Simpluris Decl. at ¶¶ 6-14. The individual notice provided to Settlement Class Members is consistent with the requirements of Rule 23(e) and the principals of due process. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173–74 (1974) ("individual notice must be provided to those

class members who are identifiable through reasonable effort."). Moreover, based on this notice plan, it is estimated that notice reached approximately 94% of potential Settlement Class Members, which is consistent with the range deemed reasonable by the Federal Judicial Center. *See* Simpluris Decl. at ¶ 15; *see also* FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (describing a notice plan as "reasonable" if it has a "reach between 70- 95%").

Moreover, the content of the Notices sufficiently advised Settlement Class Members of the essential terms of the Settlement; the rights of Settlement Class Members to share in the recovery, to request exclusion from the Settlement Class, or to object to the Settlement; and the date, time, and place of the final approval hearing. *See id*. at ¶ 7 and Exs. B and C. Thus, the Notices provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Notices also contained information regarding Class Counsel's application for attorneys' fees and reimbursement of litigation expenses, the proposed plan for allocating the Settlement proceeds among Settlement Class Members, and the application for a service award to the Settlement Class Representatives. *See In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1106 (D. Kan. 2018) ("[N]otice is sufficient if the allocation formula is provided to the class members.").

Finally, notice here provided Settlement Class Members the opportunity to object or exclude themselves from the Settlement Class by the Objection Deadline, which is forty-five days after the Notice Deadline. This deadline for exclusion or objection is consistent with reasonable objection deadlines within the Tenth Circuit. *See DeJulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (affirming 32 days as sufficient).

In short, the form and manner of notice proposed here fulfill the requirements of Fed. R.

Civ. P. 23 and due process.

## VI. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order, substantially in the form of the forthcoming proposed Final Approval Order: (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; and (iii) finding that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order and the Court's August 11, 2025 Order (Dkt. No. 45) satisfies the requirements of FRCP 23(c) and due process and constitutes the best notice practicable under the circumstances.

Dated: September 29, 2025

Respectfully submitted,

*/s/ Allen Carney*

Allen Carney (*pro hac vice*)
acarney@cbplaw.com
Hank Bates (*pro hac vice*)
hbates@cbplaw.com
Sam Jackson (*pro hac vice*)
sjackson@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
Fax: (501) 312-8505

March Reich (to apply for *pro hac vice*)
mreich@zlk.com
Gary Ishimoto (to apply for *pro hac vice*)
gishimoto@zlk.com
**LEVI & KORSINSKY LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

Jacob D. Barney (#16777)
**ANDERSON & KARRENBERG**
50 W. Broadway, Suite 600

Salt Lake City, UT 84101
Tel: (801) 534-1700
Fax: (801) 364-7497

***Attorneys for Plaintiff and the Proposed Settlement Class***

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing pleading was filed via the Court's e-filing system on this date on counsel of record.

Date: September 29, 2025

/s/*Allen Carney*
Allen Carney