**CARNEY BATES & PULLIAM, PLLC**
Allen Carney (*pro hac vice*)
acarney@cbplaw.com
Hank Bates (*pro hac vice*)
hbates@cbplaw.com
Samuel Jackson (*pro hac vice*)
sjackson@cbplaw.com
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
Fax: (501) 312-8505

**ANDERSON & KARRENBERG**
Jacob D. Barney (#16777)
50 W. Broadway, Suite 600
Salt Lake City, UT 84101
Tel: (801) 534-1700
Fax: (801) 364-7497

**LEVI & KORSINSKY LLP**
Mark Reich (to apply for *pro hac vice*)
mreich@zlk.com
Gary Ishimoto (to apply for *pro hac vice*)
gishimoto@zlk.com
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff and the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH – CENTRAL DIVISION**

| | |
|---|---|
| BENJAMIN GARCIA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY d/b/a BYU BROADCASTING<br><br>Defendant. | **JOINT DECLARATION OF SAM JACKSON, MARK REICH, AND JACOB BARNEY IN SUPPORT OF PLAINTIFF'S (i) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND (ii) MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARD**<br><br>Judge: Hon: Ann Marie McIff Allen<br><br>Mag. Judge: Hon. Daphne A. Oberg<br><br>Case No.: 1:24-cv-00188-AMA-DAO |

We, Sam Jackson, Mark Reich, and Jacob Barney, jointly declare and state as follows:

1. Sam Jackson is a partner with the law firm Carney, Bates and Pulliam, PLLC ("CBP"). Mark Reich is a partner with the law firm Levi & Korsinsky LLP ("Levi & Korsinsky"). Jacob Barney is a partner with the law firm Anderson & Karrenberg ("Anderson & Karrenberg"). CBP, Levi & Korsinsky, and Anderson & Karrenberg (collectively "Class Counsel") represent Plaintiff Benjamin Garcia ("Plaintiff" or "Settlement Class Representative") and the proposed Settlement Class in this action (the "Action").

2. Throughout this litigation, we and our firms prosecuted Plaintiff's claims on behalf of the putative Class. On July 18, 2025, the Court appointed us and our respective law firms as Class Counsel for the Settlement Class in its Preliminary Approval Order. *See* Dkt. No. 42.

3. We make this Joint Declaration in support of Plaintiff's (i) Motion for Final Approval of Class Action Settlement and (ii) Motion for Award of Attorneys' Fee, Litigation Expenses, and Service Award (collectively referred to as "Plaintiff's Motions"). Except where otherwise stated, we each have personal knowledge of the facts set forth in this Joint Declaration based on active participation in all aspects of the prosecution and resolution of the Action. If called upon to testify, we each could and would testify competently to the truth of the matters stated herein.

**<u>Overview of Plaintiff's Allegations, Mediation, and Settlement</u>**

4. On November 12, 2024, Plaintiff, individually and on behalf of a putative Class, commenced this lawsuit in the United States District Court for the District of Utah (the "Court") against Defendant. *See* Dkt. No. 1.

5. In his Complaint, Plaintiff alleged the Defendant intentionally installed the Meta tracking Pixel on its website, https://www.byutv.org. Plaintiff alleged a tracking Pixel is a code a

website operator installs, that operates invisibly, and tracks how a visitor moves through, and interacts with, a website. Plaintiff alleged the Pixel enables websites to build profiles of users with the hope of improving the effectiveness of advertising by targeting those users. Plaintiff further alleged the Pixel is used to monitor the video content a user views or requests, and shares this information with Meta in violation of the Video Privacy Protection Act 18 U.S.C. § 2710, *et seq*. ("VPPA").

6. On January 17, 2025, Defendant filed a Motion to Dismiss Plaintiff's Complaint. Dkt No. 22. Plaintiff filed an opposition to Defendant's Motion to Dismiss. Dkt. No. 23. On February 28, 2025, Defendant filed its reply in further support of its Motion to Dismiss. Dkt. No. 27.

7. On April 16, 2025, the Parties filed a Joint Stipulation to Stay Pending Outcome of Mediation, informing the Court that they had agreed to mediation before the Honorable Freda L. Wolfson (Ret.) on May 9, 2025, and requesting the Court to stay all proceedings to May 30, 2025 (Dkt. No. 32), which the Court granted (Dkt. No. 33).

8. On May 9, 2025, the Parties attended an all-day mediation with the Honorable Freda L. Wolfson (Ret.). As part of the mediation process, the Parties submitted mediation statements and exchanged informal discovery regarding the merits of the case and class certification under Fed. R. Civ. P. 23 and Fed R. Evid. 408. The mediation resulted in a settlement in principle.

9. On May 29, 2025, the Parties filed a Joint Status Report, wherein the Parties informed the Court that as a result of a full-day mediation session before the Honorable Freda L. Wolfson (Ret.), the Parties were able to reach an agreement in principle to resolve this matter. Dkt. No. 34. As such, the Parties asked the Court to extend the stay in this matter to and through June

9, 2025, on which date Plaintiff would either file a motion for preliminary approval of the Settlement or provide a further status update to the Court (*see id.*), which the Court granted. Dkt. No. 35.

10. On June 9, 2025, the Parties filed a joint motion for extension of the stay to and through June 23, 2025 (Dkt. No. 36), while they continued to diligently work together on finalizing the Settlement Agreement and related exhibits, selecting a settlement administrator, and consulting with the settlement administrator to ensure the Settlement Agreement includes an optimal notice plan. The Court granted the Joint Motion. Dkt. No. 37.

11. On June 23, 2025, Plaintiff filed his Unopposed Motion for Preliminary Approval of the Class Action Settlement (Dkt. Nos. 38–41).

12. As further detailed in Plaintiff's preliminary approval papers and the Joint Declaration of Sam Jackson, Mark Reich, and Jacob Barney in Support of Preliminary Approval, the Settlement secures an excellent recovery for the Settlement Class. Pursuant to the Settlement, Defendant will establish a cash settlement fund of $1,548,495.00 (the "Settlement Fund") for the benefit of Settlement Class Members.[1]

13. The Settlement provides a substantial recovery of the alleged compensatory damages, amounting to approximately $9.88 per Settlement Class Member before deduction of costs and fees. This represents an outstanding recovery for a per-Settlement Class Member basis in the VPPA context. *See, e.g., In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (VPPA settlement providing $16.50 per

[1] Paragraph 1.32 of the Settlement Agreement provided for a $1,250,000 Settlement Fund (*see* Dkt. No. 41); however, on August 7, 2025, Plaintiff moved to amend the Email Notice and Long Form Notice Documents pursuant to ¶ 1.32 of the Settlement Agreement to reflect an increase in the Settlement Fund to $1,548,495 triggered by an increase in class size by greater than 5% (Dkt. No. 44), which the Court granted (Dkt. No. 45).

claim); *Feldman v. Star Tribune Media Company LLC*, 0:22-CV-01731, 2024 WL 3026556, at *2 (June 17, 2024) ($2,900,000 VPPA settlement yielding per settlement class member recoveries of $9.67); *Sellers, et al. v. Bleacher Report, Inc.*, 2024-003537-CA-01, slip opinion (August 8, 2024) (granting final approval to $4,800,000 VPPA settlement yielding per settlement class member recoveries of $1.78).

14. The claims process is simple and straightforward. Each Settlement Class Member who submits a valid claim will be eligible to receive a pro rata distribution from the Settlement Fund less any court-approved attorneys' fees and expenses, service award, and costs of settlement notice and administration. Settlement Class Members are able to submit their Claim Forms online via the Settlement Website or through the mail. No portion of the Settlement Fund reverts to Defendant.

15. On July 18, 2025, this Court entered its Preliminary Approval Order, finding that for the purposes of settlement and notice, the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3) have been met; and the terms of the Settlement are within the range of a fair, reasonable, and adequate compromise. Accordingly, this Court preliminarily approved the Settlement. *See* Dkt. No. 42.

**<u>Notice to the Settlement Class</u>**

16. Following entry of the Court's Preliminary Approval Order, the Settlement Administrator, Simpluris, Inc. ("Simpluris"), began implementation of the court-approved Notice Plan, and Class Counsel has worked with Simpluris to effectuate the court-ordered Notice Plan.

17. In accordance with the Settlement Agreement and the Court's Preliminary Approval Order, the Notice Plan provided for two rounds of individual email notice of the proposed Settlement to potential Settlement Class Members for whom a valid email address was

available (the "Email Notice"). *See* Declaration of Settlement Administrator Simpluris, Inc. in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Simpluris Declaration") at ¶¶ 8–11 and Ex. B.

18. More specifically, on August 15, 2025, Simpluris disseminated the Email Notice to 219,111 potential Settlement Class Members for whom a valid email address was available. Of those 219,111 potential Settlement Class Members, Simpluris successfully delivered Email Notice to 185,498. *See id.* at ¶ 10.

19. On August 15, 2025, Simpluris also established a dedicated website for the Settlement with the URL www.garciavideoprivacyclassaction.com (the "Settlement Website"), which included the following: (1) a more detailed Long Form Notice and Claim Form; (2) a "Contact Us" page with the Settlement Administrator's contact information; (3) important case documents, including the Settlement Agreement and the Court's Preliminary Approval Order; (4) important case dates and deadlines, including the deadlines to file a claim, opt out, and object; (5) a summary of Settlement Class Members' options; and (6) the date, time, and location of the Final Approval Hearing. *See id.* at ¶¶ 7, 13 & Exs. C-D.

20. On September 12, 2025, Simpluris sent a Reminder Email Notice to the 219,111 potential Settlement Class Members included in the first round of notice. In addition, a second valid email was identified for 10 of the potential Settlement Class Members, and a Reminder Email Notice was sent to those emails. Of those 219,121 valid emails, Simpluris successfully delivered Email Notice to 215,613 email addresses. *See id.* at ¶ 11.

21. Through Simpluris's notice efforts, notice is estimated to have reached approximately 94% of the identified, potential Settlement Class Members to whom notice was sent. *See* Simpluris Decl. at ¶ 15.

22. Currently, Simpluris received zero objections to the Settlement and zero requests for exclusion. *See* Simpluris Decl. at ¶¶ 17-20. The deadline for exclusions and objections is October 14, 2025. Class Counsel will provide the Court an update on whether any requests for exclusion were submitted and respond to any substantive objections, if any, after the deadline has expired.

23. As of September 22, 2025, Simpluris has received 998 submitted settlement claims forms. Simpluris Decl. at ¶ 16. Considering there have been no objections or requests for exclusions, the reaction of the Settlement Class is overwhelmingly positive.

**Factors Supporting an Award of Attorneys' Fees, Litigation Expenses, and Service Award**

24. Class Counsel's fee request represents one-third of the cash value of the Settlement Fund of $1,548,495.00.

25. The percentage of the fund method is an appropriate basis on which to award Class Counsel a fee in this case. The percentage of the fund approach serves the realities of both economic models and market practices. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("Under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class"); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 164–65, 59 S. Ct. 777, 779 (1939); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123, 5 S. Ct. 387, 390 (1885).

26. Moreover, the requested fee award of one-third of the cash common fund of $1,548,495.00 is consistent with fee awards in other settlements in the Tenth Circuit. *See, e.g., KPH Healthcare Servs.*, No. 20-2065-DDC-TJJ, 2024 WL 3360499, at *4 (D. Kan. July 9, 2024)

(awarding attorneys' fees in the amount of one-third of the Settlement Amount as reasonable); *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*, No. 1:22-CV-01176-RM-SBP, 2024 WL 1743497, at *9 (D. Colo. Apr. 23, 2024) (stating attorneys' fees of one-third of the settlement fund "plus reasonable out-of-pocket costs and expenses" "are typical of those commonly found reasonable in class settlements," and further stating service awards of $10,000 "are typical in class action settlements").

27. Additionally, consideration of all the applicable factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) strongly supports the requested fee award.

28. The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed Settlement Class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator. Class Counsel have significant experience in litigating class actions of similar size, scope, and complexity to the instant action. Class Counsel regularly engage in major complex litigation involving consumer privacy, have the resources necessary to conduct litigation of this nature, and have frequently been appointed class counsel by courts throughout the country. *See* Dkt. No. 40, Exs. A-C (Class Counsel's Resumes).

29. Class Counsel have invested significant time and resources into this action. Class Counsel performed such tasks as: (i) conducting a thorough and detailed pre-suit investigation of the facts supporting Plaintiff's allegations—facts which require intensive forensic analysis of backend website communications requiring highly specialized skills and seeking to identify individual network transmissions among hundreds to determine whether such internet communications violated the privacy of Plaintiff and the class members—and of the defenses

available to Defendant, which are equally complex to the extent a large variety of factors can complicate issues of class certification and the merits of these kinds of cases; (ii) drafting a detailed complaint; (iii) researching issues presented and drafting an opposition to Defendant's Motion to Dismiss; (iv) engaging in informal discovery; (v) drafting a mediation statement and participating in a full-day mediation session; (vi) engaging in post-mediation negotiations and holding numerous telephonic calls with defense counsel regarding settlement; (vii) achieving a very favorable Settlement on behalf of the Settlement Class; (viii) negotiating comprehensive settlement papers; and (ix) successfully moving for preliminary approval of the Settlement.

30. Class Counsel have devoted extensive hours to the prosecution of this Action. Moreover, Class Counsel's work in this litigation is far from over. Class Counsel will commit significant ongoing time and resources to presenting the Settlement to the Court at the Final Approval Hearing, the continued administration of the Settlement, responding to Settlement Class Member's inquiries concerning the Settlement, and overseeing and coordinating distribution of the Settlement Funds to the Settlement Class Members. Based on Class Counsel's experience in other cases, this ongoing work will likely involve over 100 additional hours until fully resolved.

31. From the outset of the case, Plaintiff and Class Counsel recognized that the case presented substantial litigation risks. Indeed, the claims in this action involve complicated forensic, technical, and legal issues concerning Defendant's implementation, configuration, and use of the Meta Pixel (which is a hidden piece of software not identifiable through typical website interactions and which requires identifying and translating Pixel transmissions to determine how the Pixel was configured and what information it transmits to Meta); its operation of the Pixel as that implicates the VPPA, which required Class Counsel to develop an understanding of whether the Pixel's transmissions to Meta contained information protected by the VPPA, whether other

code on Defendant's website was also transmitting PII to third parties, and whether the transmissions at issue in Plaintiff's legal claims arise from Defendant's use of such technologies; and class issues including class size and class damages; among others. Had the litigation continued, these issues would have required extensive and complex forensic expert testimony.

32. Additionally, Class Counsel faced significant risks related to certifying and maintaining a litigation class. Any order granting class certification would have likely led to Defendant's filing a petition for interlocutory review of the Court's ruling.

33. Despite the clear risks involved in pursing this litigation, Class Counsel undertook this matter on a contingency basis with no guarantee of recovery and have committed substantial resources of attorney and staff time, in addition to out-of-pocket costs, towards investigating, litigating, and settling the matter. In doing so, Class Counsel also assumed the risk of the significant delay associated with achieving a final resolution through trial or any appeals.

34. BYU has presented a vigorous defense throughout the litigation and has been represented by highly experienced lawyers from BYU, Zwillgen PLLC, and Ray Quinney & Nebeker PC. Notwithstanding this formidable opposition, Class Counsel developed a strong case and negotiated settlement terms that are highly favorable to Settlement Class Members.

35. Plaintiff and Class Counsel recognize that despite our belief in the strength of Plaintiff's claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain. Additionally, absent a settlement, the success of any of Defendant's defenses could deprive Plaintiff and the Settlement Class Members of any potential relief whatsoever.

36. Although not required in the Tenth Circuit, performing a lodestar crosscheck confirms that the requested fee is reasonable and should be approved. Based on review of our

firm's timesheets, Class Counsel collectively worked a total of 546.9 hours prosecuting this matter on behalf of the Settlement Class, yielding a lodestar of $442,474.26, when using Class Counsel's customary rates for complex class action litigation (a more detailed description of each law firm's lodestar is provided in paragraphs 39-50 below):

| Firm | Hours | Lodestar |
|---|---|---|
| Carney Bates & Pulliam, PLLC | 456.2 | $394,558.00 |
| Levi & Korsinsky LLP | 72.5 | $36,086.26 |
| Anderson & Karrenberg | 18.2 | $11,830.00 |
| **Total** | **546.9** | **$442,474.26** |

37. As such, Class Counsel's requested fee yields a reasonable multiplier of approximately 1.17. *See Campbell v. C.R. England, Inc.*, No. 2:13-CV-00262, 2015 WL 5773709, at *7 n.5 (D. Utah Sept. 30, 2015) ("Applying the lodestar crosscheck calculation here results in multiplier of 2.9, which is within a reasonable range."); *Mishkin v. Zynex, Inc.,* No. 09–cv–00780–REB–KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (approving multiplier of .80 and collecting cases from district courts in the Tenth Circuit approving multipliers ranging from 2.5 to 4.6).

**CBP's Reasonable Lodestar**.

38. Only Mr. Jackson attests to the facts set forth in this Section.

39. My firm's total lodestar is $394,558.00, as reflected in the following chart, broken down by timekeeper:

| Timekeeper | Position | Hourly Rate | Total Hours | Lodestar |
|---|---|---|---|---|
| Hank Bates | Partner | $1,030.00 | 25.9 | $26,677.00 |
| Courtney Brown | Associate | $520.00 | 52.3 | $27,196.00 |
| Allen Carney | Partner | $1,030.00 | 73.1 | $75,293.00 |
| Sam Jackson | Partner | $850.00 | 124.9 | $106,165.00 |
| Cole Lorigan | Associate | $740.00 | 87.7 | $64,158.00 |
| Tiffany Wyatt Oldham | Partner | $1,030.00 | 92.3 | $95,069.00 |
| **Total** | | | **456.2** | **$394,558.00** |

40. The hourly rates for the attorneys and professional support staff in my firm are the usual and customary rates set by the firm for each individual for matters of this complexity and in this market or similar markets. These hourly rates are the same as, or comparable to, the rates accepted by courts in other class action litigation. My firm's rates are set based on periodic analysis of rates charged by firms performing comparable work and that have been approved by courts in other class actions within this legal market, this Circuit and nationwide. Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

41. I am prepared to provide the Court with any further documentation or explanation regarding CBP's lodestar, including detailed daily time records, upon request by the Court.

**Levi & Korsinsky's Reasonable Lodestar**

42. Only Mr. Reich attests to the facts set forth in this Section.

43. My firm's total lodestar is $36,086.26, as reflected in the following chart, broken down by timekeeper:

| Timekeeper | Position | Hourly Rate | Total Hours | Lodestar |
|---|---|---|---|---|
| Eduard Korinsky | Partner | $1,100.00 | 3.5 | $3,850.00 |
| Amanda Herda | Paralegal | $350.00 | 2.65 | $927.50 |
| Gary Ishimoto | Associate | $600.00 | 14 | $8,400.00 |
| Mark Reich | Partner | $1,000.00 | 13.6 | $13,600.00 |
| Jennifer Mittasch | Associate | $475.00 | 2.6 | $1,235.00 |
| Colin Brown | Associate | $650.00 | 1.4 | $910.00 |
| Kenny Bentley | Staff Attorney | $475.00 | 1.7 | $807.50 |
| Isabella Herda | Legal Assistant | $325.00 | 1.25 | $406.25 |
| Alyssa Tolentino | Associate | $500.00 | 48.9 | $23,400.00 |
| **Total** | | | **72.5** | **$36,086.26** |

44. The hourly rates for the attorneys and professional support staff in my firm are the usual and customary rates set by the firm for each individual for matters of this complexity and in this market or similar markets. These hourly rates are the same as, or comparable to, the rates accepted by courts in other class action litigation. My firm's rates are set based on periodic analysis of rates charged by firms performing comparable work and that have been approved by courts in other class actions within this legal market, this Circuit and nationwide. Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

45. I am prepared to provide the Court with any further documentation or explanation regarding Levi & Korsinsky's lodestar, including detailed daily time records, upon request by the Court.

**Anderson & Karrenberg's Reasonable Lodestar**

46. Only Mr. Barney attests to the facts set forth in this Section.

47. My firm's total lodestar is $11,830.00, as reflected in the following chart, broken down by timekeeper:

| Timekeeper | Position | Hourly Rate | Total Hours | Lodestar |
|---|---|---|---|---|
| Jacob Barney | Partner | $650.00 | 10.4 | $6,760.00 |
| Jared Scott | Partner | $650.00 | 7.8 | $5,070.00 |
| **Total** | | | **18.2** | **$11,830.00** |

48. The hourly rates for the attorneys and professional support staff in my firm are the usual and customary rates set by the firm for each individual for matters of this complexity and in this market or similar markets. These hourly rates are the same as, or comparable to, the rates

accepted by courts in other class action litigation. My firm's rates are set based on periodic analysis of rates charged by firms performing comparable work and that have been approved by courts in other class actions within this legal market, this Circuit and nationwide. Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

49. I am prepared to provide the Court with any further documentation or explanation regarding Anderson & Karrenberg's lodestar, including detailed daily time records, upon request by the Court.

**Class Counsel's Reasonably Incurred Litigation Costs**

50. Over the course of the litigation, Class Counsel kept records of all litigation expenses. The following table summarizes Class Counsel's reasonable incurred litigation expenses:

| Expense Category | Amount |
|---|---|
| Mediation Services | $10,208.24 |
| Filing and PHV Fees | $555.00 |
| Travel, Lodging, and Meals | $4,501.55 |
| Process Service Fees | $160.00 |
| Online Research | $137.42 |
| **Total** | **$15,562.21** |

51. With the assistance of attorneys and staff working under our direction and supervision, we conducted a comprehensive audit of all litigation expenses incurred by Class Counsel in the prosecution of this Action. In performing the audit of Class Counsel's litigation expenses, we exercised our discretion in removing any expenses we considered unnecessary or irrelevant.

52. We are prepared to provide the Court with any further documentation or explanation regarding Class Counsel's litigation expenses, including detailed invoice and payment records, upon request by the Court.

**Class Representative's Service Award**

53. Class Counsel is of the opinion that Plaintiff's active involvement in this case was critical to its ultimate resolution. Without his willingness to assume the risks and responsibilities of serving as the Class Representative, we do not believe such a favorable result could have been achieved.

54. Plaintiff took his role as Class Representative seriously, devoting significant amounts of time and effort to protecting the interests of the Settlement Class. He provided information to Class Counsel that informed the complaint and regularly communicated with Class Counsel throughout the litigation about strategy and major case developments. Moreover, he carefully reviewed and considered the Settlement, and consulted with Class Counsel, before approving it. In light of his work, the requested service award of $5,000 for Plaintiff is eminently reasonable.

55. We declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 29th day of September, 2025.

By: */s/ Sam Jackson*
Sam Jackson

By: */s/ Mark Reich*
Mark Reich

By: */s/ Jacob Barney*
Jacob Barney